

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

October 31, 1962

Honorable D. F. Smallhorst
Executive Secretary
Texas Water Pollution Control Board
1100 West 49th Street
Austin, Texas

Opinion No. WW-1465

Re: Whether Article 7621d, V.C.S.,
requires that oil operators
who desire to dispose of oil
field brines, etc., must ob-
tain a permit from the Water
Pollution Control Board, and
related questions.

Dear Mr. Smallhorst:

We are in receipt of your letter in which you request
the opinion of this office concerning the following questions:

"1. Under Article 7621d, V.C.S., is it required
that oil operators wishing to dispose of oil field
brines, etc. must obtain a permit from the Water Pol-
lution Control Board?

"2. If a permit is required, then will the acti-
vities of the Water Pollution Control Board in enforc-
ing the conditions of the permit issued infringe upon
the authority of the Railroad Commission under the
provisions of Article 6029a, V.C.S.?

"3. Would it be permissible under Article 7621d,
V.C.S., and the exemption already mentioned concern-
ing the Railroad Commission and Article 6029a, V.C.S.,
for the Water Pollution Control Board to assign and
delegate all responsibilities for the disposal of oil
field brines in such a manner as to protect the sur-
face and underground waters to the Railroad Commission?

"4. Would it be appropriate in view of this ap-
parent conflict of authority for the Water Pollution
Control Board to adopt a rule along the following
lines: 'In the event of any conflict between statu-
tory provisions contained in Texas statutes or between

provisions of these rules, the Board reserves the
right to proceed under that provision of the law
or rules, as appropriate, which in the opinion of
the Board is for the best interest of the State of
Texas and the citizens thereof.'  This statement
might serve as a basis for the Board designating
full responsibility for the disposal of oil field
wastes to the Railroad Commission in accordance
with Article 6029a, V.C.S., and not requiring a
permit from the Water Pollution Board.

"5.  Since there is an apparent conflict be-
tween Section 5 of Article 7621d, V.C.S., which
requires 'Within twelve (12) months after the date
upon which this law becomes effective, every per-
son who upon such effective date is discharging
or permitting to be discharged any waste into or
adjacent to the waters of this State shall apply
to the Board for a permit to continue such dis-
charge if it is his desire to so continue . . .'
and the exemption of the Railroad Commission as
contained in Section 10, subsection c(4), of Arti-
cle 7621d, V.C.S., what interpretation and policy
do you suggest?"

The Water Plllution Control Board was created by House
Bill 24 of the 57th Legislature, codified as Article 7621d of
Vernon's Civil Statutes.  The rather broad scope of this act is
reflected in its caption:

"An Act to establish a State Water Pollution
   Control Board, and to provide for the control,
   prevention and abatement of pollution of the
   surface and underground waters of the State.
   . . ."

Subsequent sections of the Act define terminology, pre-
scribe the establishment of the Water Pollution Control Board,
prohibit pollution, specify the Board's regulatory powers and
enforcement procedures and establish penalties for pollution.  A
notable exception to the Board's general responsibility and au-
thority for water pollution control is contained in paragraph
(c)(4) of Section 10, which provides:

"Notwithstanding any provision of this Act,
   the Railroad Commission of Texas shall and the
   Board of Water Engineers shall continue to exer-
   cise the authority granted to them in Chapter 82,
   Acts of the Fifty-seventh Legislature, Regular

Session, 1961, codified as Article 7621(b), Ver-
non's Annotated Civil Statutes; and the Railroad
Commission of Texas shall continue to exercise
the authority granted it in Chapter 406, Acts of
the Fifty-fourth Legislature, Regular Session,
1955, codified as Article 6029(a)."

The obvious fact ascertainable from the above quoted
expression is that the extant law of this State concerning the
general subject of water pollution and control consists of at
least these three contemporaneous statutes - Article 7621d re-
lating to the Watter Pollution Control Board, Article 6029(a)
relating exclusively to the Railroad Commission of Texas and
Article 7621b relating jointly to the Railroad Commission and
the Texas Water Commission.  There are other statutes concerned
with water pollution and control, but these do not appear mater-
ial to this opinion request.

Article 6029(a) is the earliest in point of time and
basically is a two-paragraph statute.  The first paragraph states
that--

"The Railroad Commission shall also make and
enforce rules, regulations and orders in connection
with the drilling of exploratory wells and wells for
oil or gas or any purpose in connection therewith;
the production of oil or gas; and the operation,
abandonment and proper plugging of such wells to pre-
vent the pollution of the streams and public bodies
of surface water of the State, and any sub-surface
water strata that are capable of producing water
suitable for domestic or livestock use, or for irri-
gation of crops or for industrial use, which would
or might result from the escape or release of crude
petroleum oil, salt water or other mineralized waters
from any such well, or from operations in connection
therewith."

The second paragraph relates entirely to execution of bonds by
oil industry operators under certain situations to insure plug-
ging of abandoned wells in accordance with rules of the Railroad
Commission.

Section 2 of the statute is an emergency clause and
states that the fact that the functions and operations of the Rail-
road Commission are so closely related to the abatement and con-
trol of surface and ground water pollution in this State, and the
need for enforcement power in such matters by the Commission,
creates an emergency, etc.  This clause emphasizes that which

seems clear from the language of the statute; namely, that the Railroad Commission's responsibility and authority in this respect is to regulate the oil and gas industry so as to prevent anything which would or might result in pollution of surface or subsurface water.

The Railroad Commission apparently never has taken the view that this particular statute gave the Commission the authority or duty to grant licenses or permits to utilize any particular method of disposal of oil field wastes or to permit pollution of any type or degree.

The prior administrative construction of Article 6029 (a) by the Railroad Commission apparently was recognized and adopted by the 57th Legislature in Article 7621b, Vernon's Civil Statutes. In this statute, the Commission was specifically authorized to issue permits, under certain specified conditions, for injection wells having the purpose of disposal of salt water or other wastes arising out of or incidental to the drilling for or the production of oil and gas. (Art. 7621b, Sec. 2-c). The same statute grants a similar authority to the Texas Water Commission to permit injection wells for the disposal of other industrial and municipal wastes. (Art. 7621b, Sec. 2-b).

Section 1(h) of Article 7621b defines an injection well, as follows:

"'Injection well' is an artificial excavation or opening into the ground, made by means of digging, boring, drilling, jetting, driving or otherwise, and made for the purpose of injecting, transmitting, or disposing of industrial and municipal waste into a subsurface stratum. An injection well shall also include wells initially drilled for the purpose of producing oil and gas when used for the purpose of transmitting, injecting, or disposing of industrial and municipal waste into a subsurface stratum. An injection well shall not include any surface pit, excavation or natural depression used to dispose of industrial and municipal waste."
(Emphasis added).

The term "industrial and municipal waste" is defined in Section 1(e) of Article 7621b, as follows:

"'Industrial and municipal waste' is any liquid, gaseous, solid or other waste substance or a combination thereof resulting from any process of industry, manufacturing, trade, or business or from the development or recovery of any natural resources, or resulting from the

disposal of sewage or other wastes of cities, towns, villages, communities, water districts and other municipal corporations, which may cause or might reasonably be expected to cause pollution of fresh water." (Emphasis added).

Both the extent and limit of the Railroad Commission's and the Texas Water Commission's responsibility and authority in this respect are demonstrated by these definitions. And plainly excepted from the permit jurisdiction of both agencies is "any surface pit, excavation or natural depression used to dispose of industrial and municipal waste," which includes waste from the oil and gas industry.

Turning now to the request for opinion, we find that each question submitted presupposes that a conflict does or may exist between the responsibility and authority granted by the three contemporaneous statutes to the respective agencies of the State. The Legislature has provided in Section 6 of Article 10, Vernon's Civil Statutes, that the following rule shall govern in the construction of civil statutes:

"In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

Stating the rule slightly differently, 82 Corpus Juris Secundum, page 560, Section 321, provides:

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute."

Where contemporaneous statutes relate to the same general subject, as is the case here, the following additional rule of construction stated in 82 Corpus Juris Secundum, page 801, Section 366, shall be considered:

"Statutes which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose are in pari materia, and it is a general rule that in the construction of a particular statute, or in the interpretation of its provisions, all other statutes in pari materia should be read in connection with it, as together constituting one law, and they should be harmonized, if possible."

Hon. D. F. Smallhorst, page 6  (WW-1465)


        Adverting to these rules of statutory construction
and the three statutes concerned with the same subject matter,
we observe that reference is made to the "old law" and the
"evil" in Section 18 of Article 7621d.  There the Legislature
stated:

        "The fact that pollution of the surface and
    underground waters of this State constitutes a
    serious health and sanitation problem which should
    be corrected without delay and the further fact
    that there is an urgent need that some State agency
    be given the authority to give a prospective new
    industry a definite answer in regard to what it can
    do in disposing of its effluent create an emergency
    and an imperative public necessity that the Consti-
    tutional Rule requiring bills to be read on three
    several days in each House be suspended, and this
    Rule is hereby suspended."

        The "remedy" was the establishment of the Water Pollu-
tion Control Board in Article 7621d, together with the delegation
of authority to the Railroad Commission and the Texas Water Com-
mission in Article 7621b to issue permits for injection wells
utilized in the disposal of industrial and municipal wastes.

        Considering each of the three contemporaneous statutes
to be in pari materia and together constituting one body of law,
the next step is to ascertain whether the parts of the body of
law are harmonious.  Section 4(a) of Article 7621d, the Water
Pollution Control Act, states that the Water Pollution Control
Board shall administer the Act and have the authority to abate and
prevent pollution of the waters of the State under the conditions
prescribed in the Act.  Section 4(b) states that the Board, after
notice to affected parties, and public hearing, may issue permits
for the discharge of waste into or adjacent to the waters of the
State.

        The pertinent terms to which this authority is directed
are defined in Section 2 of the Act, as follows:

    "(b)  'Waters' shall be construed to be under-
    ground waters and lakes, bays, ponds, impounding
    reservoirs, springs, rivers, streams, creeks, estu-
    aries, marshes, inlets, canals, the Gulf of Mexico
    within the territorial limits of the State of Texas,
    and all other public bodies of surface water, natu-
    ral or artificial, inland or coastal, fresh or salt,
    that are wholly or partially within or bordering
    the State or within its jurisdiction.

"(c)  'Waste' means sewage, industrial waste, and other wastes, or any of them, as hereinbelow defined.

"(d)  'Sewage' means the water-carried human or animal wastes from residences, buildings, industrial establishments, cities, towns, or other places, together with such ground water infiltration and surface waters with which it may be commingled.  The admixture with sewage, as above defined, of industrial wastes or other wastes, as hereinafter defined, shall also be considered 'sewage' within the meaning of this Act.

"(e)  'Industrial waste' means any water-borne liquid, gaseous, solid, or other waste substance or a combination thereof resulting from any process of industry, manufacturing, trade, or business.

"(f)  'Other wastes' means garbage, refuse, decayed wood, sawdust, shavings, bark, sand, lime, cinders, ashes, offal, oil, tar, dye stuffs, acids, chemicals, salt water, and all other substances not sewage or industrial waste that may cause or tend to cause pollution of the waters of the State.

"(g)  'Pollution' means any discharge or deposit of waste into or adjacent to the waters of the State, or any act or omission in connection therewith, that by itself, or in conjunction with any other act or omission or acts or omissions, causes or continues to cause or will cause such waters to be unclean, noxious, odorous, impure, contaminated, altered or otherwise affected to such an extent that they are rendered harmful, detrimental or injurious to public health, safety or welfare, or to terrestrial or aquatic life, or the growth and propagation thereof, or to the use of such waters for domestic, commercial, industrial, agricultural, recreational or other lawful reasonable use."

The first question propounded is as follows:

"Under Article 7621d, V.C.S., is it required that oil operators wishing to dispose of oil field brines, etc. must obtain a permit from the Water Pollution Control Board?"

As has been pointed out previously, Article 6029(a) does not authorize the Railroad Commission to grant licenses or permits to utilize any particular method of disposal of oil field wastes. Consequently, the exclusion of the Commission's authority under this statute from the provisions of the Water Pollution Control Act does not deny the permit jurisdiction of the Water Pollution Control Board over the disposal of oil field brines, etc., if such jurisdiction otherwise exists in the Act. By the express language of the exception contained in paragraph (c)(4) of Article 7621d, however, the issuance of permits for injection wells utilized in the disposal of industrial and municipal wastes in accordance with Article 7621b is committed to the jurisdiction of the Railroad Commission and the Texas Water Commission. Since the statutory definition of an injection well specifically excludes "any surface pit, excavation or natural depression used to dispose of industrial and municipal waste," disposal of wastes utilizing these methods is not within the permit jurisdiction of the Railroad Commission and the Texas Water Commission.

On the other hand, oil field brines, etc., must surely be within the all inclusive definition of "other wastes" contained in Section 2(f) of the Water Pollution Control Act, which specifically includes:

". . . oil, tar, . . . acids, chemicals, salt water, and all other substances not sewage or industrial waste that may cause or tend to cause pollution of the waters of the State "

In answer to your first question, therefore, we are of the opinion that the discharge of oil field brines, etc., into or adjacent to the waters of the State, as defined in Section 2 (b) of Article 7621d, that may cause or tend to cause pollution, as defined in Section 2(g) of Article 7621d, of the waters of the State, shall be unlawful on and after the effective date of the Water Pollution Control Act unless the same shall be done pursuant to and in accordance with a then-existing permit issued by the Water Pollution Control Board Excepted from this answer and the jurisdiction of the Board is the issuance of permits for injection wells utilized in the disposal of industrial and municipal wastes, as defined in Article 7621b.

Your second question inquires whether the activities of the Water Pollution Control Board in enforcing the conditions of a permit issued for the disposal of oil field brines, etc., would infringe upon the authority of the Railroad Commission under the provisions of Article 6029(a). As previously discussed in this opinion, Article 6029(a) authorizes the Commission to make and

enforce rules, regulations and orders in connection with the discovery and production of oil and gas so as to prevent the pollution of surface and subsurface water, which would or might result from the escape or release of crude petroleum oil, salt water or other mineralized waters. But pollution has been defined by the Legislature in the later enacted Article 7621d, Section 9, as follows:

"It shall hereafter be unlawful for any person to throw, drain, run or otherwise discharge into the waters of this State, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise enter such waters, any waste, unless pursuant to and in accordance with a then-existing permit that shall cause a condition of pollution as defined in Subsection (g) of Section 2 of this Act." (Emphasis added).

The Legislature having thus defined the discharge of waste into waters of the State pursuant to and in accordance with a then-existing permit as not constituting pollution, the posession of such a permit would constitute a defense to a charge of pollution by a State agency. We digress here sufficiently to note that the provision of Section 14 of Article 7621d, which states that "no permit issued by the Water Pollution Control Board shall be admissible in evidence against nor raise any presumption against the exercise of the power and authority of water districts in pollution control," apparently was intended to deny this defense as against river authorities and water districts.

By the same definition quoted above, the discharge of waste into or adjacent to the waters of the State without a permit or pursuant to but not in accordance with a permit would constitute unlawful pollution. Where the pollution under either circumstance occurs as a result of the discovery and production of oil and gas, both the enforcement power of the Railroad Commission pursuant to Article 6029(a) and the Water Pollution Control Board pursuant to Article 7621d could be utilized to abate the pollution. No reason is perceived why the existence of a dual enforcement power should conflict with or infringe upon the responsibility and authority of either agency.

Your third question inquires whether the Water Pollution Control Board could assign and delegate all responsibilities to the Railroad Commission for the disposal of oil field brines in such a manner as to protect surface and underground waters.

We answer this question in the negative for the same reason stated in Attorney General Opinion No. WW-66, which states:

"It is a general rule that public duties must be performed and governmental powers exercised by the public official or body designated by law. Such duties are in the nature of a public trust and cannot be delegated to others. Green v. San Antonio Water Supply Co., 193 S.W. 453, Civ.App. (1917) Reh. den.; Horne Zoological Arena Co. v. City of Dallas, Civ.App., Reh.den. (1937), 45 S.W.2d 714, and cases there cited."

Your fourth and fifth questions are both predicated upon an apparent conflict between the responsibility and authority of the Railroad Commission pursuant to Article 6029(a) and the Water Pollution Control Board pursuant to Article 7621d. Having found no conflict between the two statutes, there is no occasion or need to answer questions four and five.

## SUMMARY

The provisions of Articles 6029(a), 7621b and 7621d of Vernon's Civil Statutes are in pari materia and should be read together as constituting one body of law relating to water pollution control and prevention. All three statutes are found to be harmonious when correctly construed.

Disposal through injection wells of wastes from the discovery and production of oil and gas is under the exclusive permit jurisdiction of the Railroad Commission; disposal through injection wells of any other industrial and municipal waste is under the exclusive permit jurisdiction of the Texas Water Commission. Discharge into or adjacent to the waters of the State of all industrial and municipal wastes, including but not limited to waste from the oil and gas industry, by any means other than injection wells must be pursuant to and in accordance with a permit issued by the Water Pollution Control Board.

Yours very truly,

WILL WILSON
Attorney General of Texas

By F. R. Booth

F. R. Booth
Assistant

FRB:ms:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Forman Suarez
Linward Shivers
J. C. Davis
Ben Harrison

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Leonard Passmore